Donald STARK (Employee), Respondent,

v.

**TOWNSEND TREE SERVICE COMPANY (Employer),**

and

Hartford Accident & Indemnity Company (Insurer), Appellants.

No. 30472.

St. Louis Court of Appeals.

Missouri.

May 17, 1960.

John S. Marsalek, Moser, Marsalke, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for appellants.

Tom B. Brown, Jr., Edina, J. Andy Zenge, Jr., Canton, for respondent.

WOLFE, Presiding Judge.

This appeal is taken from a judgment of the Circuit Court reversing a finding of the Division of Workmen's Compensation, Department of Labor and Industrial Relations of Missouri. The employer and insurer prevailed before the Referee, and the Referee was affirmed on appeal by the Commission. Thereafter the employee appealed to the Circuit Court, where the finding of the Commission was reversed and the cause remanded. From the judgment of the Circuit Court the employer and insurer prosecute this appeal.

It was admitted that Townsend Tree Service Company was an employer operating under the provisions of the Missouri Workmen's Compensation law, and that its

liability under the law was insured by Hartford Accident & Indemnity Company. It was further admitted that Donald Stark, the employee claimant, sustained an injury by accident arising out of and in the course of his employment. The wage and compensation rates in relation thereto were also agreed upon.

The claimant testified that on May 27, 1957, he was engaged in cutting limbs from a tree. While so engaged he fell about sixteen or seventeen feet to a cement surface, striking his left shin and back. He was taken by the foreman to Dr. C. W. Gibson, who sutured the laceration on the claimant's shin. This required four or five stitches. Stark testified that the doctor also put some medicine on his back.

The fall occurred in the morning, and after his visit to the hospital the claimant returned to work. He continued to work for about a week and a half and then took off a week because his back was "bothering him". He returned and worked about two weeks more and then quit because his back "got sore". He said that the laceration on his shin became infected and took four or five weeks to heal.

In July he went to work for a company in Kansas City. He said that there he was learning the sales trade. He was required to "stock the shelves". He worked for about a month and quit "on account of" his back. After that he worked for the Rock Island Railroad for a period of two months. He left this job when he was laid off in the early part of September.

In July, shortly after leaving the company where he was required to stock the shelves, he had a swelling and soreness in the distal joint of the middle finger of the left hand. Then the swelling appeared in the distal joint of the middle finger of the right hand. He said that within one and a half weeks the swelling extended to the joints of his toes and that his feet kept getting increasingly painful. While he was working for the railroad he sprained his ankle and was also suffering from an irritation on his head. This irritation, which was in the form of small skin lesions, was called psoriasis. After spraining his ankle he went to see a Dr. Sereres, the railroad company doctor, and the claimant was sent by Dr. Sereres to the hospital for blood tests. He was given a prescription.

After this, Stark returned to his home in Edina, and on November 4, 1957 he consulted a Dr. Cornelius, an osteopathic physician. Dr. Cornelius testified that he found inflammation and swelling in numerous joints of Stark's body. He said that Stark had a few psoriatic lesions and was quite ill. He diagnosed the illness as rheumatoid arthritis. He was asked if psoriatic arthritis was the same disease as rheumatoid arthritis, and he replied: "I, personally, can see no distinction between psoriatic arthritis and rheumatoid arthritis, in that the symptoms are identical, the causes are identical, the treatment is identical, and rheumatoid arthritis, as I stated before, has a high incidence of psoriasis."

He further stated that the etiology of rheumatoid arthritis was not known, but that it had been established that the disease was frequently found following physical or emotional shock, infection and trauma. He stated that it could immediately follow an injury or show up some time later. He gave as his opinion that the exciting cause of the arthritis was the injury that Stark sustained when he fell on May 27, 1957.

The claimant was examined on June 12, 1958, by a Martin Davis, M. D., at the request of the employer and insurer. He diagnosed the employee's illness as psoriatic arthritis and stated: "It is my conclusion that this man does have psoriasis. I think he also has a definite arthritis involving primarily his hands, and somewhat his feet, and I would be inclined to think that the two are associated, that this is a so-called psoriatic arthritis. It is possible that he has a rheumatoid arthritis which isn't related to his psoriasis, but it would be my opinion it probably is the type that is described as psoriatic arthritis."

Again, he stated: "I don't think there is any doubt but what this man has an arthritis which some doctors might call it rheumatoid arthritis, but I prefer to call it psoriatic arthritis."

He stated that shock would not have much to do with arthritis unless it was prolonged, and that infection has nothing to do with arthritis unless it is for an extended period of time. He also stated that trauma causes what is called traumatic arthritis, but that it is not the type of arthritis from which the employee was suffering. He gave as his conclusion that the fall and the slight infection and any shock resulting from the fall would not produce the arthritis of which the employee complained.

The foregoing summarizes rather lengthy medical testimony on which the Referee found that the "rheumatoid arthritis now complained of by employee is not the result of an injury of May 27, 1957, nor related thereto". Upon appeal to the Commission, the Commission made the following award denying compensation:

"We find from all the evidence that the employee, Donald Stark, sustained an accident on May 27, 1957, arising out of and in the course of his employment with Townsend Tree Service Company. We further find that the employee sustained no disability, either temporary or permanent, as a result of said accident.

"We find that the rheumatoid arthritis complained of by the employee is not a result of said accident. The employee proved that there are certain predisposing factors in relation to this disease. This overlooks the fact that a predisposing factor and a competent producing cause are not one and the same thing. We find that the etiology of rheumatoid arthritis is unknown. In fine, the employee has failed to prove the causal relationship between the accident and his condition.

"Compensation, therefore, must be and the same is hereby denied."

Upon appeal to the Circuit Court, the award of the Commission was reversed on the grounds: "That there was not sufficient competent evidence in the record to warrant the making of the award by the Industrial Commission that the employee sustained no disability, either temporary or permanent, as a result of the accident; and the further finding of the Commission that the rheumatoid arthritis was not a result of said accident."

■ The scope of judicial review in workmen's compensation cases has been well established. The courts by review decide whether or not the Commission could have reasonably made its findings and reached its conclusion upon consideration of all of the evidence before it. This does not mean that the reviewing court may substitute its judgment for that of the Commission. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55.

It is the appellant's contention that the court erred in reversing the finding of the Commission in that there was substantial evidence that the employee suffered no compensable disability from his fall. In passing upon this, we bear in mind that under Section 287.160, subsection 1, RSMo V. A.M.S., no compensation is payable for the first three days or less of disability unless the disability shall last longer than four weeks.

■ Up to the time of the onset of arthritis, the only ailment of which the claimant complained was that his back "bothered him". The Commission was not bound to believe him, and this is particularly true in view of the fact that the claimant's doctor in no way indicated that the employee was disabled by an existing injury to his back. The credibility of the employee's testimony was a question for the Commission to determine. Smith v. Smith, Mo.Sup., 237 S.W. 2d 84; Diebold v. Great Atlantic & Pacific Tea Co., Mo.App., 241 S.W.2d 31; Long

v. Mississippi Lime Co. of Mo., Mo.App., 257 S.W.2d 167.

The medical testimony is devoted almost exclusively to the arthritis from which the employee suffered. The testimony, both for the employee and that offered by the employer, shows that without question the employee had arthritis. He had what was called rheumatic or psoriatic arthritis. His doctor said that there was no difference between the two. The employer's medical witness said that while some doctors called the ailment rheumatic, he preferred to call it psoriatic. He thought that there was some difference and that the rheumatic type was more crippling. He gave as his opinion that the arthritis from which the employee suffered was not caused by his fall.

The respondent states that the Circuit Court should be affirmed for the reason that the Commission found that the employee was suffering from rheumatic arthritis and not psoriatic arthritis. It is asserted that the Commission must therefore have believed the medical testimony of the employee's doctor and disbelieved the medical witness called by the employer. This does not follow. Both stated that the causes and treatment were the same, and the employee's doctor stated that he saw no difference between them. The fact that the Commission called the arthritis rheumatic does not mean that they did not believe the employer's doctor's statement that there was no causal connection between the fall and the arthritis, for he stated that such a fall could only cause traumatic arthritis, and that this was not present.

The question of fact for determination was the cause of the arthritis. There were two conflicting medical theories regarding this. The Commission chose to believe the theory of the employer's medical witness. The testimony of Dr. Davis as set out above constituted substantial evidence to support their finding. Williams v. International Shoe Co., Mo.App., 213 S.W.2d 657; Brown v. Griesedieck Western Brewing Co., Mo. App., 250 S.W.2d 803; Vollmar v. Board of

Jewish Education, Mo.Sup., 287 S.W.2d 868.

From our consideration of the record we conclude that the judgment of the Circuit Court should be reversed and the cause remanded with directions to enter a judgment affirming the award of the Industrial Commission. It is so ordered.

ANDERSON and RUDDY, JJ., concur.